IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

R.B.,[1]

        Plaintiff,

Vs.                                                   No. 18-2643-SAC

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant R.B.'s Title II application for disability and disability insurance benefits protectively filed on February 10, 2016. The application alleged an onset date of May 23, 2015. The application was denied, initially and on reconsideration, and a hearing before an administrative law judge ("ALJ") ended with a denial of benefits. The Appeals Council denied a request for review, so the ALJ's decision stands as the Commissioner's final decision. The claimant seeks to reverse and remand the decision for an award of benefits.

**STANDARD OF REVIEW**

---

[1] The use of initials is to preserve privacy interests.

1

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. *See Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. A claimant is disabled only if determined that his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The Commissioner is to make this severity determination by considering "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)

(internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (internal quotation marks and citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted). Findings will not be affirmed by isolating facts and labeling them as substantial evidence, for the court must scrutinize the entire record to assess the rationality of the Commissioner's decision. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

**ALJ's DECISION**

The ALJ employed the following five-step sequential evaluation process (20 C.F.R. § 404.1520) for determining a disability application. (Tr.

3

14-16). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ at step four determines the claimant's residual functional capacity ("RFC") and then decides whether the claimant has the RFC to perform the requirements of his or her past relevant work. Step five of the process has the ALJ determine whether the claimant is able to do any other work considering his or her RFC, age, education and work experience. For steps one through four, the burden rests with the claimant to prove a disability that prevents performance of past relevant work, but the burden shifts to the Commissioner at step five. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

In his decision, the ALJ found for step one that the "claimant has not engaged in substantial gainful activity since the alleged onset date of May 23, 2015." (Tr. 17). For step two, the ALJ found that the claimant has the severe impairment of Lyme disease but that her hypertension was controlled with medication and her mental impairments of depression and anxiety caused only "minimal limitations." *Id.* At step three, the ALJ found

4

that the "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 18). The ALJ determined a step four that the claimant had the RFC "to perform light work . . . except the claimant could not climb laddres, ropes, or scaffolds," and to balance occasionally, but was to "avoid all hazards including use of moving machinery and exposure to unprotected heights." (Tr. 18). The ALJ's step four conclusion was that the "claimant is capable of performing past relevant work as an elementary teacher." (Tr. 23). Consequently, the ALJ found that the plaintiff was not disabled.

**ARGUMENTS**

<u>Finding of Severe Impairments at Step Two</u>

The claimant's first argues the ALJ erred at step two in failing to find her vertigo, nausea, fatigue, hypertension, depression and anxiety were severe impairments. The ALJ found the claimant's only severe impairment to be Lyme disease and found the alleged impairments of hypertension, depression and anxiety to be non-severe. The ALJ did not discuss vertigo, nausea, and fatigue as separate impairments but addressed them as symptoms of the Lyme disease. The ALJ noted claimant's testimony over the symptoms of "dizziness, difficulty focusing and concentrating" as well as "fatigue" as a side effect from medication. (Tr. 19). The court fails to see any error in the ALJ's handling of the vertigo, nausea and fatigue as

5

symptoms of the Lyme disease or side effects of the medication. The ALJ made findings about the same considering not only the claimant's testimony but also the medical evidence. There is nothing in the ALJ's decision to indicate he subsumed these symptoms within the disease and overlooked considering them. More importantly, the ALJ did find a severe impairment in the Lyme disease which moves the disability determination past step two:

> Mr. Allman's step-two argument fails as a matter of law. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant must make only a de minimis showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir.2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a severe medically determinable physical or mental impairment … or a combination of impairments that is severe …, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added). By its plain terms, the regulation requires a claimant to show only "a severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Consequently, the court finds no reversible error with the step two findings.

### Weight Given to Treating Physician's Opinion

In considering a treating physician's opinion, "[a]n ALJ may decline to give . . . [it] controlling weight . . . where he articulates specific, legitimate reasons for his decision, . . . finding, for example, the opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence in the record." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (internal quotation marks and citations omitted). When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source's medical opinion is still entitled to deference and is to be weighed against these relevant factors:

> 1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks and citations omitted). The ALJ's decision, however, need not include an explicit discussion of each factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) . But, the ALJ's decision must be "'sufficiently specific to make clear to any subsequent reviews the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting *Watkins*, 350 F.3d at 130 (internal quotation marks and citation omitted)).

The claimant argues the ALJ erred in failing to give significant weight to her treating physician's opinions expressed in two written assessments, Dr. Graham's letter dated February 29, 2016, (tr. 375) and Dr. Graham's RFC questionnaire dated October 17, 2017, (tr. 404-408). The claimant ascribes a questionable motive to the ALJ for analyzing these written opinions separately. The court finds no cogent argument against the ALJ separately discussing these opinions. They were rendered at distinct points in time and for distinct purposes, and they follow distinct formats. It would seem the 2017 RFC questionnaire may have been intended to cure some of the obvious deficiencies with 2016 letter.

Dr. Graham's 2016 letter openly states it was written to summarize the claimant's health problems since 2009. The ALJ began his evaluation by restating its contents. He referred to the Lyme disease diagnosis, the continuing course of her symptom complaints, the medications prescribed, and the opinion, "that her symptoms had been disabling and without significant improvement." (Tr. 21, 375). The ALJ gave the "opinion little weight" because it was not "supported with function-by-function analysis and is conclusory in nature." (Tr. 21). The ALJ further

8

stated: "it is not supported by any clinical or objective findings in that Dr. Graham's examinations have been routinely unremarkable as detailed above. Finally, this opinion relates to the ultimate issue of disability (i.e. can the claimant perform her past work)—an issue that is reserved to the Commissioner." *Id.* Earlier in his decision, the ALJ had described the Dr. Graham's treatment records as showing mostly normal examination findings. (Tr. 20). The ALJ also described the claimant's medical treatment as "routine, limited, and conservative, [and] [s]he has not required any emergency or urgent care for dizziness or related falls." (Tr. 20)).

With respect to the 2017 RFC questionnaire, the ALJ observed that Dr. Graham completed the form but that changes were made by "Shelley Diamond RN." (Tr. 21). "Consistent with treating records, he noted that he saw the claimant frequently at the onset of her illness but more recently only two to three visits a year." (Tr. 21). The ALJ summarized Dr. Graham's RFC assessment and then found:

> The undersigned gives this opinion little but partial weight. Specifically, the undersigned gives weight to the portion of the opinion that limits the claimant to never climbing ladders, as this is consistent with her reported symptoms of vertigo, complained of throughout treatment with Dr. Graham. The remainder of the opinion is given little weight, as Dr. Grahams treatment notes lack medical findings or other objective support for limitations of neck range of motion, manipulative, or postural functions. In addition, the opinion is internally inconsistent stating that the claimant had no limitations with reaching, handling, and fingering in one sentence but limiting her to 20 percent or less in the next sentence. Accordingly, and as stated above, the undersigned

9

gives this opinion only partial, but overall little weight.

(Tr. 21).

Contrary to the claimant's arguments, the ALJ was sufficiently specific in ascribing the weight given to Dr. Graham's opinions and in giving adequate reasons for that weight. Not only did the ALJ's decision acknowledge the requirements for evaluating such opinions, but it followed them. The ALJ discussed such factors as frequency of examination, nature and extent of treatment, kind of examination, and support of physician's opinion by other objective medical findings consistent with serious disabling symptoms. The ALJ's findings are not erroneous simply because laboratory results confirmed the Lyme disease diagnosis. The ALJ never doubted or discounted this diagnosis. As far as clinical findings and objective signs, Dr. Graham's opinion points only to the 2009 diagnosis and the "documented hypertension." (Tr. 404). The evidentiary record sustains the ALJ's conclusion that the objective findings in Dr. Graham's treating records fail to confirm the claimant's subjective complaints recorded there.

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *McGoffin v. Barnhart*, 288 F.3d 1248,

1252 (10th Cir.2002) (quotation omitted; emphasis in original). On the other hand, "[a]n ALJ may legitimately consider whether a treating source's opinion relied upon subjective self-reports." *Maurice W. v. Commr. of Soc. Sec. Administration*, 2019 WL 1115307, at *5 (D. Kan. Mar. 11, 2019) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005); *Boss v. Barnhart*, 67 Fed. Appx. 539, 542 (10th Cir. 2003)). Rather than speculative inferences from medical reports, the ALJ's decision is substantially supported by a fair reading of Dr. Graham's own medical records (Ex. 9F):

> However, despite all of her subjective complaints, the record documents normal examination findings. Dr. Graham noted that ENT and neurological workup was all negative (Ex. 9F). There are no clinical signs or examination findings supporting the claimant's subjective complaints in Dr. Graham's records. The claimant's gait and station have been normal (Ex. 1F/14; 9F/3). There is no evidence of motor loss, sensory loss, coordination or reflex loss or nystagmus (Ex. 9F/3). Overall, the undersigned finds that the objective evidence and clinical findings do not support her subjective complaints.

(Tr. 20). While the treatment records do reflect the claimant's complaints, they do not contain examination findings or clinical signs confirming or supporting the complaints of disabling limitations. Dr. Graham's 2017 assessment recognizes that the claimant visited him frequently at the disease's onset but now only two to three times annually and that the claimant's "condition [is] stable, but not improving." (Tr. 404). The record also sustains the ALJ's finding that the claimant "was diagnosed in 2009 and continued to work full time until May of 2015 with the same alleged

11

symptoms and limitations she now describes as disabling." (Tr. 23). This is not a fact that should have been lost on the treating physician. "While a physician must consider his patient's reports when formulating a medical opinion, he may not rely on those reports to the exclusion of the other relevant evidence." *Jewell Dean S. v. Berryhill*, 2019 WL 1762881, at *7 (D. Kan. Apr. 22, 2019).

The claimant makes much of the ALJ's failure to mention the consistency between Dr. Graham's opinion and the statements given by herself, her husband, and her two former co-workers. The ALJ expressly considered not only the claimant's statements about her symptoms and limitations but also those provided by her husband and co-workers. The ALJ questioned the witness statements as given not by disinterested third parties and not by persons medically trained to give exacting observations. "Most importantly, significant weight cannot be given to these statements because they, like the claimant's testimony, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Tr. 23). Because the ALJ did not give significant weight to these statements, the failure to mention the consistency of these statements with Dr. Graham's opinion does not indicate error. The court recognizes that another factfinder could reach a different result, but this is not the standard of review. The claimant essentially is asking this court to weigh the

consistencies as more significant than the lack of examination findings and clinical signs in the treating records, as well as, the medical opinions given by examining and non-examining physicians. It is improper for the court to reweigh the evidence and substitute its judgment for the ALJ's. Nor does this argument expose the ALJ's decision as lacking substantial evidence or as overwhelmed by other evidence.

The general rule is that, "the opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir. 1988)(citation omitted); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." (citations omitted)). As discussed above, the ALJ gave reasons for rejecting the treating physician opinion of Dr. Graham. He also gave reasons for favoring the opinions of the consulting physicians. (Tr. 22-23). He found their opinions to be consistent with the medical evidence, the limited medical treatment given and pursued, the rare exacerbation of symptoms, the treating records showing mild symptoms controlled by medication, and the claimant's reports of

13

functioning. *Id.* The court finds no error in the ALJ's decision to give more weight to the consulting physicians' opinions as he supports it with legally sufficient explanations and an adequate record.

RFC Assessment

The burden of proving functional limitations at this stage rests with the claimant. *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004). "In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on *all* of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (citation omitted) ("Inconsistency with the record as a whole, the basis on which the ALJ relied here, is in general a legitimate basis on which to discount or reject a medical opinion. *Cf.* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007)."). At the same time, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ found the claimant had the RFC for light work with the exceptions for not climbing ladders, ropes or scaffolds, for balancing occasionally, and for avoiding all hazards including use of moving machinery and exposure to unprotected heights. (Tr. 18). In reaching this conclusion,

14

the ALJ found the claimant's testimony about the intensity, persistence and limiting effects of her symptoms was inconsistent with "the relatively infrequent treatment and lack of objective findings to support the severity alleged." (Tr. 19). The ALJ noted the normal examination findings in her treatment records, the negative ENT and neurological workup, the lack of clinical signs and examination findings in Dr. Graham's records to confirm her subjective complaints. The ALJ found the claimant's daily living activities were inconsistent with her subjective allegations. The ALJ noted that her medical treatment to date has been "routine, limited and conservative." (tr. 20). The ALJ found the plaintiff was able to perform a limited range of light work. In going through the opinion evidence, the ALJ summarized Dr. Graham's assessments that included "vertigo, nausea and fatigue." (Tr. 21). The ALJ gave weight to the complaints of vertigo and imposed limitations on ladders, balance, and all hazards. With respect to the complaints of chronic fatigue, the ALJ limited the claimant to light exertional level. The ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the only intermittent treatment for symptoms associated with Lyme disease. The undersigned notes that the claimant was diagnosed in 2009 and continued to work full time until May of 2015 with the same alleged symptoms and limitations she now describes as disabling.

(Tr. 23).

As titled in her brief, the claimant's argument is that the ALJ's RFC assessment failed to account for all her physical and mental limitations and, therefore, is not supported by substantial evidence. The claimant then repeats her arguments that the ALJ should have included the limitations and symptoms to which she testified and which Dr. Graham included in his assessment and that the ALJ's reasons for discounting this evidence were insufficient. Because the ALJ's "credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)(internal quotation marks omitted). Adverse credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

The court is satisfied that the ALJ applied the correct legal standards and offered good reasons for discounting the claimant's symptoms. Those reasons included: the lack of objective medical evidence to confirm them, the intermittent and infrequent medical treatment, conservative medical treatment and failure to seek psychiatric treatment, the plaintiff's reports in 2016 that her condition was stable and she was

16

managing well, her significant daily living activities, and her ability to work from 2009 to 2015 with the same symptoms and limitations that she now alleges to be disabling. The court finds no error in the ALJ's evaluation of the evidence and finds substantial evidence in the record to sustain the ALJ's credibility finding, RFC assessment, and the conclusion that the claimant is able to perform her past work as generally performed.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

Dated this 24th day of June, 2019, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge